***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Houser with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On 19 August 2005, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. On that date, an employment relationship existed between plaintiff-employee and defendant-employer. American Casualty Company is the workers' compensation insurance carrier on the risk.
3. On 19 August 2005, plaintiff sustained a low back injury by accident arising out of and in the course of his employment with defendant-employer.
4. On all relevant dates, plaintiff's average weekly wage is $432.81 and he is currently receiving ongoing total disability compensation pursuant to N.C. Gen. Stat. § 97-29.
5. At the evidentiary hearing, the parties submitted the a Packet of Stipulated Exhibits, which was admitted into the record and marked as Stipulated Exhibit (2) and which included the following:
 a. Industrial Commission Forms and Filings and;
 b. Medical Records.
6. At the evidentiary hearing, plaintiff offered the following:
 a. Eight pages of Correspondence to and Opinion Letters from Treating Physicians, which is admitted into the record over defendants' objection, and marked as Plaintiff's Exhibit (1).
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the evidentiary hearing, plaintiff was sixty-five (65) years of age with his date of birth being 27 January 1942. Plaintiff was born in Ocho Rios, Jamaica and immigrated to the United States in 1978, becoming a citizen in 2007. Plaintiff resides with his *Page 3 
wife of thirty-seven (37) years, Ms. Ellen Mae Samuels, who works as a workers' compensation insurance adjuster for Ohio Casualty Group.
2. Plaintiff's employment history included reupholstering furniture, working as a warehouse manager, operating a shoe repair business and various other positions. Although well educated, plaintiff has been unable to secure employment in North Carolina other than jobs involving manual labor. Prior to being employed by defendant-employer, plaintiff worked for Lowe's, Inc. loading and unloading building materials in a warehouse.
3. Prior to his injury on 19 August 2005, plaintiff was physically active, exercising regularly with a treadmill, free weights and an abdominal strengthening machine. Plaintiff had also maintained his own lawn with a manual lawnmower, and tilled and maintained vegetable and flower gardens at his home. Plaintiff worked for defendant-employer in its receiving department. In this capacity, plaintiff unloaded lumber, windows, doors and other building materials. Plaintiff's duties frequently required him manually to lift greater than one hundred (100) pounds.
4. These work related and non-work related physical activities, along with his diet, helped plaintiff control his diabetes, a condition he developed during his thirties.
5. On 19 August 2005, plaintiff was unloading building materials from a truck to a loading dock by himself, a job normally performed by two employees. In this capacity, plaintiff was required to raise a door weighing approximately three-hundred (300) pounds. While raising the door, plaintiff heard his back crack and experienced the immediate onset of pain in his low and mid back, neck and right leg. Plaintiff reported this incident to his supervisor immediately, but continued to work, with significant difficulty, until 6 September 2005. *Page 4 
6. On 3 October 2005, plaintiff filed a workers' compensation claim for his injuries. Defendants denied the compensability of plaintiff's claim until 14 December 2006, the date this matter was previously set for hearing before Deputy Commissioner Kim Ledford. Because of this delay in the acceptance of plaintiff's claim, between 19 August 2005 and 14 December 2006, plaintiff sought and paid for medical treatment for his injuries and conditions he believes to be related thereto on his own.
7. Plaintiff first sought treatment on 29 August 2005 from his family physician, Dr. Scott Brundel. At that time, plaintiff reported experiencing back pain that radiated into his right arm as well as pain radiating from his upper back to his anterior chest. Dr. Brundel prescribed pain medications and referred plaintiff to a cardiologist, Dr. Pankaj Parikh. He also referred plaintiff to Dr. Kurt Ehlert.
8. On 1 September 2005, plaintiff was first examined by Dr. Parikh, at which time he reported ongoing severe chest pain that began on 19 August 2005. Dr. Parikh performed a cardiac catheterization, which revealed no cardiologic explanation for plaintiff's chest pain. At the time of the catheterization, plaintiff was experiencing pain in his neck, low back, right leg, as well as his chest.
9. Based upon the results of his catheterization, plaintiff believed that his upper back and chest pain were radiating from his lower back, and therefore pursued additional treatment for his lumbar condition from orthopedic surgeons and neurosurgeons.
10. On 12 September 2005, plaintiff was examined by Dr. Ehlert and reported that his pain had worsened since the date of his injury and was now also radiating into his right leg and into his chest. *Page 5 
11. On 18 September 2005, plaintiff underwent a lumbar MRI which revealed a disc protrusion at L3-L4, with bilateral foraminal narrowing and diffuse bulging at L4-L5 that caused foraminal narrowing.
12. On 26 September 2005, plaintiff sought treatment from Dr. Dennis Bullard, a neurosurgeon and reported continuing to experience back, leg and chest pain. Dr. Bullard recommended that plaintiff undergo lumbar epidural steroid injections. The epidural steroid injections did not provide any lasting relief of plaintiff's pain and caused his diabetic condition to worsen. Dr. Bullard did not evaluate plaintiff's cervical spine at this time because the MRI revealed lumbar pathology and his most significant pain at that time was in his lumbar spine.
13. Plaintiff was also under the care of Dr. Anthony Azzi, an endocrinologist for treatment of his diabetes. Dr. Azzi's treatment of plaintiff's diabetes began prior to his 19 August 2005 injury by accident and continued thereafter. Since his injury, plaintiff has been unable to engage in the type of physical activities he performed prior that date, thereby restricting him to sedentary lifestyle.
14. Plaintiff was insulin dependent for fourteen months prior to his injury by accident. Plaintiff took insulin once a day and he continued to do so through and after the date of the accident.
15. Plaintiff received three epidural steroid injections in October and November 2005. These injections caused plaintiff's glucose level to go up and plaintiff was required to double his insulin dose during that time frame. However, plaintiff's glucose level improved and plaintiff was able to reduce his insulin dose down to the same dose level plaintiff took prior to the accident by June 2006. *Page 6 
16. Plaintiff's back injury and medical treatment since his injury temporarily aggravated plaintiff's diabetes.
17. On 18 January 2006, plaintiff underwent a discogram ordered by Dr. Bullard. At the time of the discogram, plaintiff experienced increased chest pain. Dr. Bullard later referred plaintiff to Dr. Stephen Montgomery for consideration of two level lumbar fusion surgery. Dr. Montgomery did not believe that lumbar fusion surgery would substantially improve plaintiff's condition and instead recommended pain management and rehabilitation. Dr. Montgomery did not evaluate or examine plaintiff's cervical spine because the purpose of his consultation was to determine whether plaintiff would benefit from lumbar fusion surgery.
18. On 25 May 2006, plaintiff was evaluated by Dr. T. Craig Derian. Based upon plaintiff's medical history, diagnostic studies and an examination, Dr. Derian diagnosed plaintiff as having posterior annular tears at L2-L3, L3-L4 and L4-L5. As treatment, Dr. Derian recommended a three-level lumbar fusion surgery. Dr. Derian thoroughly discussed his findings and recommendations, including all potential risks, with plaintiff and his wife. Due to the risks associated with a lumbar fusion procedure, including his status as a diabetic, plaintiff declined to undergo operative treatment at that time.
19. Prior to his injury, plaintiff had never sought or received treatment from a psychologist or psychiatrist and had never experienced significant depression. Since his injury, he has sought and received treatment from Dr. Richard Kevin, a psychologist who provides him with counseling. Plaintiff has also received treatment from Dr. James Smith, a psychiatrist, who has prescribed medications. Both Dr. Kevin and Dr. Smith have diagnosed plaintiff as having major depression. *Page 7 
20. Dr. Kevin and Dr. Smith have opined that plaintiff's major depression was caused by his injury on 19 August 2005. Neither suggested anything other than plaintiff's injury, chronic pain and disability caused his depression.
21. Plaintiff's depression is the direct and natural result of and causally related to his 19 August 2005 injury by accident and associated chronic pain. The treatment provided by Dr. Kevin and Dr. Smith provided relief for plaintiff from his depression and was reasonably necessary. Additionally, the credible evidence of record is that plaintiff will continue to benefit from receipt of treatment from Dr. Kevin and Dr. Smith.
22. In his ongoing efforts to alleviate his pain, plaintiff underwent a course of acupuncture, which relieved, but did not eliminate his pain for approximately six months.
23. On 15 March 2006, plaintiff sought treatment from to Dr. William Lestini. During the period of his treatment with Dr. Lestini, plaintiff completed a pain diagram depicting his pain as being in his upper back and left chest. However, Dr. Lestini limited his examinations and evaluations to plaintiff's lumbar spine. Dr. Lestini reviewed plaintiff's previous diagnostic studies and ordered EMG studies, which revealed abnormalities consistent with lumbar radiculopathy. Nonetheless, Dr. Lestini concluded that plaintiff would not benefit from lumbar fusion surgery, at least in part due to the extensive number of vertebrae that would require fusing. Therefore, Dr. Lestini discharged plaintiff from his care on 1 March 2007. When Dr. Lestini discharged plaintiff from his care, defendants did not offer to provide additional medical treatment.
24. On 20 April 2006, plaintiff sought treatment from Dr. Goode-Kanawati (hereinafter Dr. Goode), a family physician. Dr. Goode treated plaintiff for hypertension, insomnia, back and neck pain, and constipation. In addition, Dr. Goode assisted in the *Page 8 
management of plaintiff's diabetes and depression. Dr. Goode treated plaintiff's conditions with medications, vitamins and dietary supplements, as well as dietary counseling. The treatment Dr. Goode provided for these conditions, including the vitamins and dietary supplements, alleviated his symptoms and tended to affect a cure.
25. Dr. Goode has opined to a reasonable degree of medical certainty that plaintiff's hypertension has been materially aggravated for the worse by his injury by accident and resulting chronic pain.
26. Plaintiff's 19 August 2005 injury by accident and resulting chronic pain have materially aggravated his hypertension. Additionally, plaintiff will medically benefit from ongoing treatment for his hypertension from Dr. Goode.
27. Dr. Goode has also testified that she believes his back injury, stress and multiple prescription medications significantly contributed to the development of his constipation.
28. Plaintiff's constipation is the direct and natural result of and causally related to his 19 August 2005 injury by accident, associated stress and related prescription medications. Additionally, plaintiff will medically benefit from ongoing treatment for his constipation from Dr. Goode.
29. As for plaintiff's insomnia, Dr. Smith has opined with certainty that plaintiff's causally related depression has significantly contributed to his insomnia. Dr. Goode has also opined to a reasonable degree of medical certainty that the chronic pain caused by his 19 August 2005 injury and distress caused his insomnia.
30. Plaintiff's insomnia is the direct and natural result of and causally related to his 19 August 2005 injury by accident and his causally related depression. Additionally, plaintiff will medically benefit from ongoing treatment for his insomnia from Dr. Goode and Dr. Smith. *Page 9 
31. In early January 2007, plaintiff experienced a significant increase in his neck pain along with brief episodes when his arms locked up and he lost the ability to use his hands. In March of 2007, after a recurrence of these symptoms, plaintiff reported these temporary episodes to Dr. Goode. Dr. Goode recommended a cervical MRI to evaluate the cause of these symptoms.
32. The Full Commission accepts as credible plaintiff's testimony that the upper back, neck, chest and arm symptoms he reported to his healthcare providers immediately after his 19 August 2005 injury, persisted, in varying degrees of severity, through the date of the evidentiary hearing.
33. The cervical MRI, which was performed on 30 May 2007, revealed multiple herniated discs, moderate to severe stenosis and spinal cord impingement. Based upon these results, plaintiff sought an evaluation and treatment from Dr. Peter Bronec, a neurosurgeon.
34. On 2 August 2007, plaintiff was examined Dr. Bronec, at which time he described his 19 August 2005 injury by accident. Plaintiff also reported that following this incident, he experienced back pain that radiated up his back, down his legs, then across his scapular region and into his anterior chest wall. Dr. Bronec performed a physical examination and reviewed plaintiff's diagnostic studies. Based upon his evaluation, Dr. Bronec recommended surgery to perform a three-level cervical fusion, with the possibility of fusing a fourth level in the future.
35. On the issue of causation relating to plaintiff's back conditions, Dr. Bronec has opined that more likely than not, the 19 August 2005 injury contributed to his neck pathology. Dr. Derian has likewise opined that plaintiff's lifting injury significantly aggravated his underlying cervical pathology consisting of a multiple-level disc degeneration and spinal stenosis. Additionally, Dr. Goode has opined that plaintiff's 19 August 2005 work-place lifting incident caused his neck and low back problems. *Page 10 
36. During his testimony, Dr. Lestini was unable to express an opinion to a reasonable degree of medical certainty that plaintiff's cervical pathology was not significantly aggravated by his accident on 19 August 2005.
37. Based upon the totality of the medical evidence of record, the undersigned find that the lifting incident on 19 August 2005 caused or significantly contributed to the cervical pathology revealed by the 30 May 2007 MRI.
38. Plaintiff's cervical pathology and the 19 August 2005 lifting incident caused the chest pain for which he was evaluated by Dr. Parikh. But for his chest pain, plaintiff would not have been required to undergo cardiologic evaluations and examinations.
39. As a result of his 19 August 2005 injury by accident, plaintiff is incapable of safely operating a motor vehicle and will benefit from the receipt of transportation services to attend medical appointments and examinations.
40. Plaintiff would medically benefit from receiving future medical treatment for his spinal conditions from Dr. Bronec, Dr. Derian or both.
41. Based upon the credible medical and vocational evidence of record, and as a result of his 19 August 2005 injury by accident and related medical conditions, plaintiff continues to be incapable of earning any wages in his former position with defendant-employer or in any other employment.
42. Defendants' defense of plaintiff's claim for medical compensation for his cardiologic evaluation, depression, diabetes, hypertension, insomnia and constipation was reasonable.
 *********** *Page 11 
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On 19 August 2005, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's diabetes was temporarily aggravated as the result of his 19 August 2005 injury by accident and the medical treatment, including prescription medications he has received. Id.
3. Plaintiff's hypertension was materially aggravated for the worse as the result of his 19 August 2005 injury by accident and resulting chronic pain. Id.
4. Plaintiff's depression, constipation and insomnia are the direct and natural result of and causally related to his 19 August 2005 injury by accident. Id.
5. Plaintiff's 19 August 2005 injury by accident caused or significantly contributed his cervical conditions, including his multiple herniated discs, spinal stenosis and spinal cord impingement. Id.
6. Based upon the credible medical and vocational evidence of record, and as a result of his 19 August 2005 injury by accident and related medical conditions, plaintiff is entitled to continuing payment of temporary total disability compensation at the rate of $288.55 per week until he returns to work or further Order of the Commission. N.C. Gen. Stat. § 97-29.
7. As the result of his 19 August 2005 injury by accident, causally related conditions and conditions materially aggravated, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including expenses associated with his cardio related exams and diagnostic studies, his *Page 12 
acupuncture, depression, constipation, insomnia, and his cervical conditions, including his multiple herniated discs, spinal stenosis and spinal cord impingement. Plaintiff is also entitled to have defendants pay for the medical treatment plaintiff received for hypertension and the medical treatment plaintiff received for the period of the temporary aggravation of his diabetes from October 2005 through June 2006. N.C. Gen. Stat. §§ 97-25; 97-25.1.
8. As the result of his 19 August 2005 injury by accident, causally related conditions and conditions materially aggravated, plaintiff is entitled to have defendants reimburse him directly for related medical expenses incurred during the period of 19 August 2005 through 14 December 2006. N.C. Gen. Stat. § 97-25.
9. Defendants did not engage in stubborn or unfounded litigiousness. N.C. Gen. Stat. § 97-88.1
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved below, defendants shall continue to pay plaintiff compensation at the rate of $288.55 per week until he returns to work or further Order of the Commission.
2. Plaintiff's counsel is entitled to an attorney's fee of 25% of ongoing temporary total disability compensation paid to plaintiff.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his 19 August 2005 injury by accident, causally related conditions and conditions materially aggravated for the worse, subject to the provisions of N.C. Gen. Stat. § 97-25.1, *Page 13 
including expenses associated with his cardio related exams and diagnostic studies, his acupuncture, depression, constipation, insomnia, and his cervical conditions, including his multiple herniated discs, spinal stenosis and spinal cord impingement, as well as his temporarily aggravated diabetes and aggravated hypertension.
3. Defendants shall reimburse plaintiff directly for related medical expenses incurred during the period of 19 August 2005 through 14 December 2006.
4. Defendants shall pay the costs.
This the 7th day of January, 2009.
 S/___________________
 DIANNE C. SELLERS
 COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ BUCK LATTIMORE COMMISSIONER *Page 1